[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11428
Non-Argument Calendar
_____

D.C. Docket No. 8:17-cr-00592-WFJ-SPF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DOMINIC GREGORY AMALFITANO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 21, 2020)

Before WILSON, ROSENBAUM, and BRANCH, Circuit Judges.

PER CURIAM:

Dominic Amalfitano pleaded guilty, pursuant to a written plea agreement, to one count of possession of methamphetamine with intent to distribute and one count of possession of stolen firearms and was sentenced to a total of 87 months' imprisonment. On appeal, he argues that a statement made by his counsel at sentencing that Amalfitano did not know the firearms were stolen revealed that the guilty plea he entered previously lacked a factual basis, and the district court should have *sua sponte* reconsidered his guilty plea upon hearing this statement. He also argues that his sentence is substantively unreasonable, but the government argues that this claim is barred by the sentence-appeal waiver in the plea agreement. After review, we conclude that Amalfitano's challenge to the validity of his guilty plea is without merit, and the sentence-appeal waiver bars the challenge to his sentence. Accordingly, we affirm in part and dismiss in part.

## I.    Background

On December 7, 2017, a federal grand jury returned an indictment, charging Almafitano with six offenses. Counts One through Four charged him with distributing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Count Five charged him with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Lastly, Count Six charged him with possession of stolen firearms, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2).

2

On January 28, 2019, Amalfitano entered into a written plea agreement in which he agreed to plead guilty to Counts Five and Six.  The plea agreement contained a sentence-appeal waiver, which provided as follows:

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

The factual basis set forth in the plea agreement provided that, on four different dates between May 30, 2017, and June 15, 2017, Amalfitano met with an undercover officer and sold him methamphetamine.  A search warrant executed on Amalfitano's residence revealed, among other items, multiple firearms, two of which had been reported stolen.

Amalfitano initialed each page of the plea agreement.  He also signed the last page underneath the certification provision, which provided that Amalfitano and his counsel certified that the plea agreement was read in its entirety by Amalfitano and that he fully understood its terms.

3

At the change-of-plea hearing, the magistrate judge[1] instructed Amalfitano to let the court know if it any time he did not understand something that was said during the hearing, and he placed Amalfitano under oath. The magistrate judge also cautioned that Amalfitano's statements could be used against him in any subsequent proceeding that sought to challenge the plea, judgment, conviction, or sentence. Amalfitano testified that he was 41 years old, had graduated high school and attended some college, understood English, was not under the influence of any drugs or alcohol or suffering from any mental or emotional disease, and understood the importance of the proceeding. The magistrate judge explained to Amalfitano the trial rights that he would be giving up by pleading guilty, and Amalfitano confirmed that he understood. The magistrate judge reviewed the elements of each count and explained the statutory maximum penalties. Amalfitano confirmed that he understood and he did not have any questions. The magistrate judge also explained that, following the plea, the United States Probation Office would prepare a presentence investigation report ("PSI"), which the district court would use to calculate Amalfitano's guidelines range, but that the district court was not bound by the guidelines range when determining the appropriate sentence and could impose any sentence up to the statutory maximum.

---

[1] Amalfitano consented to the magistrate judge presiding over the change-of-plea hearing.

Amalfitano confirmed that he had signed the plea agreement and that he fully understood its terms.  The magistrate judge then explained that, per the terms of the sentence-appeal waiver, Amalfitano waived his right to appeal his sentence "on any ground," except for "four narrow exceptions," which were if (1) his sentence exceeded the guidelines range as determined by the district court, (2) his sentence exceeded the statutory maximum, (3) his sentence violated the Eighth Amendment, or (4) the government appealed.  Amalfitano stated that he understood the waiver and that he was waiving those rights freely and voluntarily.

Additionally, Amalfitano confirmed that he had reviewed the factual basis for the plea contained in the plea agreement, and he agreed with those facts.  With regard to Count Six, the magistrate judge asked, "it says there were two firearms, a Smith & Wesson Bodyguard and a Springfield XD 9-millimeter.  Were those two weapons, to your knowledge, stolen?"  Amalfitano replied, "Yes."  Amalfitano then pleaded guilty to Counts Five and Six and confirmed that he was pleading guilty because he was in fact guilty and that he was doing so freely and voluntarily. The magistrate judge found that Amalfitano was competent, the plea was knowing and voluntary, and the plea was supported by a factual basis.  The magistrate judge explained that he would recommend that the district court accept the plea, and thereafter entered a report and recommendation ("R&R") to that effect.

5

Amalfitano did not object to the R&R, the district court adopted it, and the district court adjudicated Amalfitano guilty as to Counts Five and Six. Based on a total offense level of 29 and a criminal history category of I, Amalfitano's resulting guidelines range was 87 to 108 months' imprisonment. Amalfitano did not submit any objections to the PSI. He subsequently filed a sentencing memorandum, requesting a downward variance sentence of 48 months' imprisonment, followed by 36 months' supervised release, which he maintained was an appropriate sentence based on his background, various mitigating factors, and the 18 U.S.C. § 3553(a) factors.

At sentencing, after confirming that there were no objections, the district court adopted the PSI. While reiterating Amalfitano's request for a downward variance based on the totality of the circumstances, his counsel stated, in relevant part, that:

> A bit about the stolen firearms, Your Honor. Apparently, Mr. *Amalfitano bought these firearms believing them to be -- first of all, not to be stolen*, and it was okay for him to buy the firearms. Prior to this, as you see in his [PSI], he was not a convicted felon. So, thusly, possessing firearms in a lawful manner would not have been unlawful for him in this case. Thusly, as we can see, he's not charged as a felon in possession or anything of that nature.

(emphasis added). Amalfitano also made a statement to the court explaining that he allowed himself to get involved in a situation that he should not have, he did not sell methamphetamine for a living, would not reoffend, and had attended substance

abuse courses while incarcerated pending the resolution of this case. The government requested a sentence at the bottom of the guidelines range, which it maintained was appropriate given the totality of the circumstances.

The district court imposed concurrent terms of 87 months' imprisonment for Counts Five and Six, followed by three years of supervised release. Amalfitano did not object to the sentence.

The district court entered judgment on June 7, 2019. On December 23, 2019, Amalfitano filed a 28 U.S.C. § 2255 motion to vacate sentence, asserting, in relevant part, that his counsel was ineffective for failing to file a direct appeal. The district court granted the motion, but "only to the extent that [Amalfitano] may file a belated appeal in the related criminal case." The district court ordered the original judgment vacated, reimposed the same sentence, and entered an amended judgment. This appeal followed.

## II.    Discussion

**A.    Whether the district court should have *sua sponte* reconsidered Amalfitano's guilty plea based on statements at sentencing that revealed the plea lacked a factual basis**

Amalfitano argues that the district court should have *sua sponte* reconsidered the validity of his guilty plea based on his counsel's statement at sentencing that he purchased the two stolen firearms and did not know they were stolen. He maintains that his counsel's statement reveals that there was not a

7

factual basis to support Count Six because knowledge of the stolen nature of the firearms is an essential element of the crime.

We ordinarily review a district court's decision to accept a guilty plea for abuse of discretion and its factual findings that the requirements of Federal Rule of Criminal Procedure 11 were met for clear error. *United States v. Houser*, 70 F.3d 87, 89–90 (11th Cir. 1995). However, when a challenge to the factual basis of a plea is made for the first time on appeal, we will review only for plain error. *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1285 (11th Cir. 2015).[2] Under plain error review, we may not correct an error unless the defendant demonstrates that: (1) there was an error; (2) "the error was plain"; (3) "the error affected his substantial rights"; and (4) the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1286 (alteration in original). "With regard to a Rule 11 violation specifically, 'a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error, he would not have entered the plea.'" *United States v. Davila*, 749 F.3d 982, 993 (11th Cir. 2014) (ellipsis in original) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)). "[T]he burden [Amalfitano] faces in

---

[2] Although Amalfitano's plea agreement contained an appeal waiver, "an appeal waiver does not bar a Rule 11 claim that there is an insufficient factual basis to support a guilty plea." *Puentes-Hurtado*, 794 F.3d at 1284.

obtaining vacatur of his plea under plain-error review is a daunting obstacle that is anything but easy to satisfy." *Id.* at 994 (quotation omitted).

Rule 11 requires a showing of a factual basis for each essential element of the crime. *See United States v. Lopez*, 907 F.2d 1096, 1100 (11th Cir. 1990); Fed. R. Crim. P. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."). To convict a defendant of possession of a stolen firearm, "the government must prove that (1) the defendant possessed a stolen firearm, (2) the firearm was part of interstate commerce, and (3) the defendant knew or had reason to know that the firearms were stolen." *United States v. Seabrooks*, 839 F.3d 1326, 1333 (11th Cir. 2016) (footnote omitted); 18 U.S.C. § 922(j). Amalfitano contends that, based on his counsel's statement at sentencing, there was an insufficient factual basis to establish the third element—that Amalfitano knew the firearms were stolen. We disagree.

During the plea colloquy, the district court expressly asked Amalfitano "[w]ere those two weapons, to your knowledge, stolen," and Amalfitano replied, "Yes." Amalfitano does not dispute that he made this statement, but he contends that his answer does not prove that he had the requisite knowledge *at the time he possessed the firearms*, only that at some unspecified point he had knowledge that the firearms were stolen. But, Amalfitano answered this question after the magistrate judge had reviewed the elements of each count with him. Specifically,

9

the magistrate judge explained that the elements for the possession of the firearm charge were "[f]irst that the defendant possessed or received a stolen firearm in or affecting interstate commerce; and second, the defendant knew or had reasonable cause to believe the firearm was stolen," and Amalfitano stated that he understood and did not have any questions.  Thereafter, when asked whether he had knowledge that the firearms were stolen, he affirmatively answered "Yes" without any hesitation.  This sequence of event undermines his contention that his answer was insufficient to establish the knowledge element, particularly when viewed through the plain error lens.  Additionally, Amalfitano confirmed that he had reviewed and agreed with the factual basis contained in the plea agreement, and was pleading guilty because he was in fact guilty.  There is a "strong presumption" that statements made by a defendant during the plea colloquy are true, and Amalfitano has not met his heavy burden of establishing that his statements were false.  *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the plea colloquy are true."); *see also United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.").  Under these circumstances, we cannot conclude that the district court plainly erred in finding that there was a sufficient factual basis for Amalfitano's guilty plea at the time it accepted it.

10

Amalfitano argues that, after his counsel stated at his sentencing that Amalfitano did not know that the firearms were stolen at the time he purchased them, the district court should have reconsidered the guilty plea, despite the fact that Amalfitano did not seek to vacate the plea himself. We have held that a guilty plea may be withdrawn only "upon the initiative of the defendant," and a district court lacks the authority to *sua sponte* vacate a defendant's guilty plea. *See United States v. Cannon*, 807 F.2d 1528, 1529 (11th Cir. 1986) (citing former Rule 32(d) (now Rule 11(d)) of Federal Rule of Criminal Procedure, governing plea withdrawals). Therefore, notwithstanding counsel's statement at sentencing regarding Amalfitano's alleged lack of knowledge that the firearms were stolen, the district court did not plainly err in not reconsidering the guilty plea *sua sponte*. *Id.*

Moreover, Amalfitano has not alleged, much less shown, "a reasonable probability that, but for the error, he would not have entered the plea.'" *Davila*, 749 F.3d at 993. Accordingly, because Amalfitano has failed to meet his heavy burden under plain error review to warrant vacatur of his plea, we affirm Amalfitano's conviction.

11

**B.  Whether Amalfitano's claim that his sentence is substantively unreasonable is barred by his sentence-appeal waiver**

Amalfitano argues that his 87-month sentence is substantively unreasonable. The government maintains that this claim is barred by the plea agreement's sentence-appeal waiver.

"A plea agreement is, in essence, a contract between the Government and a criminal defendant.  Among the considerations that a defendant may offer as part of such a contract is waiver of his right to appeal, provided that the waiver is made knowingly and voluntarily."  *United States v. Boyd*, 975 F.3d 1185, 1190 (11th Cir. 2020) (quoting *United States v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999)). "Where the government seeks to enforce an appeal waiver, '[it] must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver.'"  *Id.* (quoting *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993)).  "We review the validity of a sentence appeal waiver *de novo*."  *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008).

A review of the record confirms that Amalfitano's appeal waiver is valid and enforceable.  As part of the plea agreement, Amalfitano agreed to waive his right to appeal his sentence on "any ground" with four exceptions, none of which are present here.  He initialed the page of the plea agreement containing the

12

sentence-appeal waiver and signed the plea agreement, affirming that he had read it and understood its terms.  Additionally, the magistrate judge explained the significance of the waiver and its exceptions during the plea colloquy and Amalfitano confirmed that he understood the waiver and that he was entering it freely and voluntarily.  Accordingly, the sentence-appeal waiver is valid, enforceable, and precludes a challenge to the substantive reasonableness of the sentence.  *Bushert*, 997 F.2d at 1351.  Therefore, this claim must be dismissed.

### III.    Conclusion

For the foregoing reasons, we affirm Amalfitano's convictions and dismiss his substantive reasonableness claim.

### AFFIRMED IN PART AND DISMISSED IN PART.